IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOCAL UNION NO. 98            :    CIVIL ACTION
INTERNATIONAL BROTHERHOOD     :
OF ELECTRICAL WORKERS, et al. :
                             :
          v.                  :
                             :
RIVERVIEW ELECTRICAL          :
CONSTRUCTION, et al.          :    NO. 10-1168

MEMORANDUM

McLaughlin, J.                            October 17, 2011

        This is an action brought by trustees of various multi-

employer benefit and trust funds of Local Union No. 98

International Brotherhood of Electrical Workers (the "Funds") to

recover amounts they are owed under the Employee Retirement

Income Security Act ("ERISA").  The defendants Riverview

Electrical Construction, Inc. ("REC") and its principals,

Patricia Flanagan, Timothy Flanagan, and Thomas Flanagan, have

not appeared or defended in this action.  The Funds have moved

for entry of default judgment.  For the reasons that follow, the

Court will grant the motion.

I.   Procedural History

        The Funds filed this action on March 17, 2010 under

ERISA to recover money owed to certain union employee benefit

funds pursuant to a multi-employer collective bargaining

agreement between Local Union No. 98 and the Philadelphia

Division of the Penn-Del-Jersey Chapter of the National

Electrical Contractors Association ("Commercial Agreement").[1]  The complaint asserts claims against REC as an employer and against the Flanagans as employers or, in the alternative, as ERISA fiduciaries.

The defendants never answered the complaint and the Clerk of Court entered their default on September 13, 2010.  On November 24, 2010, the defendants moved for default judgment under Federal Rule of Civil Procedure 55(b), which the Court denied without prejudice because the plaintiffs failed to provide sufficient information to support the amounts they claimed in unpaid contributions, interest, and penalties.

The plaintiffs filed their instant Amended Motion for Default Judgment on April 7, 2011 and voluntarily rescinded the allegations of Counts II-IV which sought to hold the individual defendants personally liable as ERISA employers.  Their instant motion relies solely on a fiduciary theory of liability under ERISA Section 409, 29 U.S.C. § 1109(a), and seeks contributions and withholdings only for the months of April 2009, May 2009, and June 2009.  Attached to the amended motion is the affidavit of

---

[1] The multi-employer benefit funds named in the complaint are (1) the Health and Welfare Fund; (2) the Pension Fund; (3) the Joint Apprentice Training Fund ("JATF"); (4) the Vacation Fund; (5) the National Electrical Benefit Fund ("NEBF"); (6) the Labor-Management Cooperation Fund; and (7) the Deferred Income (or Profit Sharing) Fund.  At the September 29, 2011 hearing, the plaintiffs conceded any claims they were making under the Labor-Management Cooperation Fund and the "Job Recovery" fund (not named in the Commercial Agreement).

Debra Gerber ("Gerber Aff."), an employee of a firm responsible for maintaining an accounting of the values of monthly contributions and withholdings that REC was required to remit to Local 98 and its funds pursuant to the Commercial Agreement.

On September 29, 2011, the Court held a hearing on the motion, and the plaintiffs presented evidence regarding the amounts owed to the plans and the sources of the figures the Funds claim are due and owing.  The plaintiffs supplemented that showing by filing an Appendix of Exhibits on October 11, 2011.

## II.  Factual Background[2]

The plaintiffs are trustees of the Funds, established pursuant to Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3),(37).  REC is a corporation engaged in the business of providing electrical services.  Patricia Flanagan was President and owner of REC, and Timothy and Thomas Flanagan were owners and acting principals of REC.  REC was a party to the Commercial Agreement, and thus obligated to furnish monthly reports to Local 98 regarding the names of its member employees, the hours they worked, and their gross earnings.  The operative Commercial Agreement between Local 98 and REC was effective from May 1, 2006 through April 20, 2010.  Compl. ¶¶ 5-14, Ex. 1 § 1.01.

---

[2] Because this is a motion for default judgment, the Court accepts as true any factual allegations, other than those as to damages, contained in the complaint.  DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005).

A.    <u>The Funds</u>

The Commercial Agreement, in accordance with the trust agreements establishing the Funds, required REC to remit monthly payments to the following funds relevant to the instant motion: (1) the Health & Welfare Fund; (2) the Pension Fund; (3) the JATF; (4) the Vacation Fund; and (5) the Deferred Income/Profit Sharing Fund.[3]  Gerber Aff. ¶¶ 5, 8, 11, 14, 17.  The Commercial Agreement also provides for liquidated damages to be paid on all delinquent contributions in the amount of 10% of the total contributions owing, and interest at the rate of 2% per month until full payment has been received.  Compl. Ex. 1 § 3.09(b).

REC failed to remit payment for any of these funds in the months of April, May, and June 2009.  The total amounts owing to each fund are as follows:

---

[3] The Gerber Affidavit also claimed payments were due for the Contribution of Political Expenditure Fund, the Union Dues - SUPP Fund, and the SUP2100 Fund.  Gerber Aff. ¶¶ 20-29.  The funds do not appear in the complaint or Commercial Agreement, and the Court therefore finds there is insufficient evidence to support a judgment including amounts due to these funds.  The Gerber Affidavit also claimed unpaid union dues were owed, but because the plaintiffs have only pled claims under ERISA, these amounts are unrecoverable.  <u>See</u> 29 U.S.C. §§ 10021(1)-(3).  Finally, although the complaint seeks unpaid contributions to the NEBF, the Gerber Affidavit is devoid of any reference to that fund; at the September 29 evidentiary hearing, Ms. Gerber confirmed that she is not responsible for managing the accounting of that fund.  Hr'g Tr. 25:12-17 (Docket No. 16).  The Court thus finds the plaintiffs have not presented sufficient evidence to hold the defendants liable for any unpaid contributions to that fund.

```
Health & Welfare          $ 10066.55
Pension                      6855.88
Vacation                     2445.75
JATF                         1109.20
Deferred Income              7687.80
-----------------------------------
Total                     $ 28165.18
```

Gerber Aff. ¶¶ 5-19.  Pursuant to the Commercial Agreement, $2,816.52 in liquidated damages and $2,372.03 in interest (2% per month between August 2009 and September 2011) are owed on the total.

Disbursements to the Health & Welfare, Pension, JATF, and Deferred Income funds are made in the form of employer contributions, calculated as a percentage of gross labor payroll. Gerber Aff. ¶¶ 5, 8, 14, 17.  Disbursements to the Vacation Fund, by contrast, are withheld from employee wages and then sent to the fund.  Id. ¶ 11.  The plaintiffs presented evidence that contributions to the Health and Welfare Fund, JATF, and Profit Sharing Fund are vested in the trustees of the fund at the time the obligation to contribute arises.  App'x of Pls.' Exs., Ex. 3.

### B.  The Individual Defendants

Counts V-VII of the complaint allege violations by the individual defendants of 29 U.S.C. § 1109 for breach of their fiduciary duties.  The complaint and instant motion contain a range of factual allegations with respect to each individual defendant.

Patricia Flanagan is a principal of REC who had

authority to bind the corporation in contract and signed the Letter of Assent binding REC to the Commercial Agreement.  Pls.' Mot. 8, Ex. 1.  She also authorized and tendered the payment of contributions and withholdings due to the Funds pursuant to the Commercial Agreement, and "exercised discretionary control over the management of the financial responsibilities and business affairs" of REC.  Compl. ¶ 74.

Timothy Flanagan is an owner of REC, according to the affidavit of Ms. Jacqueline Coyle, who supervised an accounting compliance review of REC conducted by an outside accounting firm, and heard this fact from REC's payroll administrator, Mr. Michael Newman.  Affidavit of Jacqueline Coyle, Id. Ex. 3.  He also authorized and tendered the payment of contributions and withholdings due to the Funds pursuant to the Commercial Agreement, and "exercised discretionary control over the management of the financial responsibilities and business affairs" of REC.  Compl. ¶ 87.

Thomas Flanagan is also an owner of REC.  Id.  In addition, Thomas Flanagan signed at least twelve checks between October 2008 and July 2009, drawn from REC's payroll account and payable to Local 98 in connection with the Funds.  Id. Ex. 4.  He authorized and tendered the payment of contributions and withholdings due to the Funds pursuant to the Commercial Agreement, and "exercised discretionary control over the

management of the financial responsibilities and business affairs" of REC. Compl. ¶ 100.

C.    Attorneys' Fees and Costs

The plaintiffs also presented evidence that they incurred $17,050.89 in attorney's fees and reimbursable expenses from counsel Steven F. Marino in connection with this litigation. App'x of Pls.' Exs., Ex. 4.

III. Discussion

Under section 1145 of ERISA, every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall make such contributions in accordance with the terms of the plan or agreement. 29 U.S.C. § 1145.

A.    Liability of REC

ERISA provides that in any action by a fiduciary against an employer for delinquent contributions in which judgment is awarded in favor of the plan, the court shall award the plan:

        (A) the unpaid contributions,
        (B) interest on the unpaid contributions,
        (C) an amount equal to the greater of -
            (i) interest on the unpaid
            contributions, or
            (ii) liquidated damages provided for
            under the plan in an amount not in
            excess of 20 percent (or such higher
            percentage as may be permitted under

> Federal or State law) of the amount
> determined by the court under
> subparagraph (A),
> (D) reasonable attorney's fees and costs of
> the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as
> the court deems appropriate.

29 U.S.C. § 1132(g)(2).  Section 1132(g) also provides that interest on unpaid contributions shall be determined by using the rate specified by the plan, or, if none, the rate prescribed.

The facts set forth above demonstrate that REC and Local 98 entered into a Commercial Agreement that required REC to remit monthly contributions, but that REC failed to remit contributions for the months of April, May, and June 2009.  The Commercial Agreement further provided for liquidated damages and interest on unpaid contributions.  The Court finds that the plaintiffs are entitled to recover from REC the unpaid monthly contributions, liquidated damages in the amount of 10%, interest in the amount of 2% per month, attorney's fees, and costs.

B.    Liability of the Flanagans

A fiduciary is personally liable for a breach of fiduciary duty under ERISA, 29 U.S.C. § 1109(a).  In Counts IV-VI, the trustees seek to hold individual defendant Powers personally liable as a fiduciary of the Funds under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  The Court finds that the plaintiffs have alleged sufficient facts to hold each of the Flanagans liable as fiduciaries.

Under ERISA, 29 U.S.C. § 1002(21)(A), a person is a fiduciary to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

The statutory definition requires that a fiduciary "must be someone acting in the capacity of manager, administrator, or financial advisor to a plan." Pegram v. Herdrich, 530 U.S. 211, 222 (2000) (internal quotations omitted). The statute uses different criteria in imposing fiduciary obligations for each of these three roles.

In this case, the applicable provision is § 1002(21)(A)(i) because plaintiffs seek to hold the Flanagans liable as managers, not as administrators or financial advisors. See Bd. Of Trustees of Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 272 (3d Cir. 2001) (hereinafter Bricklayers). "Fiduciary status attaches to a person managing an ERISA plan under subsection (i) of § 1002(21)(A) if that person exercises discretion in the

management of the plan, <u>or</u> if the person exercises any authority or control over the management or disposition of the plan's assets." <u>Srein v. Frankford Trust Co.</u>, 323 F.3d 214, 220-21 (3d Cir. 2003) (emphasis in original).

Lower courts have used a two-part test to determine whether fiduciary liability attaches to individuals: (1) unpaid contributions must be "plan assets," and (2) the individual must either exercise discretion in the management of the plan <u>or</u> exercise any authority or control over the plan assets.  <u>See</u> <u>Gateway Elevator</u>, No. 09-4206, 2011 WL 2462027, at *5 n.6 (E.D. Pa. June 21, 2011); <u>see also</u> <u>Teamsters Health and Welfare Fund v.</u> <u>World Trans., Inc.</u>, 241 F. Supp. 2d 499, 505 (E.D. Pa. 2003) (hereinafter <u>Teamsters</u>) (citing <u>Curcio v. John Hancock Mut. Life</u> <u>Ins. Co.</u>, 33 F.3d 226, 233 (3d Cir. 1994)).

The plaintiffs here have met their burden as to the "plan assets" prong with respect to all funds except the Pension fund.  They have met their burden as to the "authority or control" prong with respect to all of the Flanagans.

1.   <u>Plan Assets</u>

The record supports a finding that the unpaid contributions are plan assets of all the Funds except the Pension Fund.  ERISA regulations define "plan assets" as amounts that a participant pays to an employer, or amounts that a participant has withheld from his wages by an employer.  29 C.F.R. § 2510.3-

102(a)(1).  Here, the Commercial Agreement provides that REC
shall deduct wages from plan participants at and deposit the
contributions into the Vacation Fund.  Thus, these monies are
plan assets for purposes of holding the Flanagans liable as ERISA
fiduciaries.

The remainder of the Funds are funded by employer
contributions.  When an employer's contribution (not an
employee's wage withholding) is the source of funding for a plan,
federal regulations are silent, and a court must look to the
terms of the agreement to determine whether unpaid employer
contributions constitute "plan assets" under ERISA.  See Local
Union No. 98, IBEW v. RGB Svcs., LLC, No. 10-3486, 2011 WL
292233, at *5 (E.D. Pa. Jan. 28, 2011) (citing Bottle Beer
Drivers, Warehousemen & Helpers Teamsters Local 843 v. Anheuser
Busch Inc., 96 F. App'x 831, 834 (3d Cir. 2004)).

The plaintiffs have presented evidence that the Trust
Agreements associated with the Health & Welfare, JATF, and Profit
Sharing Funds establish that "[t]itle to all monies paid into
[the funds] shall be vested in the Trustees of the Fund, in trust
as of the date the employer's obligation to contribute arises."
App'x of Pls.' Exs., Ex. 4.  The record thus supports a finding
that the unpaid contributions to all funds except for the Pension
Fund are plan assets.

2.   Authority or Control

The plaintiffs have also demonstrated that each of the Flanagans exercised discretionary authority or control over the disposition of the plan assets sufficient to hold each liable as an ERISA fiduciary.

Here, the factual allegations of the complaint establish that the Flanagans exercised discretionary control over the monies owed to the Funds as high-level officers of REC. According to the complaint, the Flanagans' positions as senior officers and owners of REC gave each discretion over the business affairs and expenditures of the company.  These responsibilities included the authorization and tender of payment of contributions and withholdings due under the Commercial Agreement.  The complaint establishes that each of the Flanagans breached their duties by failing to remit contributions to the Funds in accordance with the Commercial Agreement.  Patricia Flanagan, Thomas Flanagan, and Timothy Flanagan are thus individually liable as ERISA fiduciaries with respect to each of the funds except the Pension fund.

An appropriate order follows.